UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ANTHONY DANIELS,

        Petitioner,

v.                                    Case No. 3:14-cv-216-J-39JBT

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

        Respondents.

_____

**ORDER**

**I. Status**

      Petitioner Anthony Daniels, an inmate of the Florida penal system, challenges his 2011 state court (Baker County) conviction for DUI/manslaughter.  Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Petition) (Doc. 1).  Respondents filed an Answer in Response to Order to Show Cause (Response) (Doc. 15), with exhibits in support thereof.  Petitioner filed a Reply to State's Response to § 2254 Petition (Reply) (Doc. 21).  In response to the Court's orders (Docs. 22, 26), Respondents obtained and filed copies of the transcripts of the plea colloquy and sentencing proceeding in the underlying state case (Docs. 25, 27).  Respondents also supplemented their appendix (Doc. 15-1) with the postconviction appellate briefs and record (Doc. 29).[1]

_____

[1] The Court hereinafter refers to the Respondent's exhibits within the Appendix (Doc. 15-1) as "Ex." and those within the Supplemental Appendix (Doc. 29-1) as "Supp. Ex."  With respect to the Plea Transcript (Doc. 27) (Plea Tr.) and the Sentencing Transcript (Doc. 25-1), (Sent. Tr.), the Court refers to the page numbers of the transcripts themselves.

## II. Procedural History

Daniels entered a plea of guilty to DUI manslaughter.  Ex. B; Plea Tr.  The state court sentenced him to ten years in prison with a four-year minimum mandatory to be followed by five years of drug offender probation.  Ex. C.  He did not file a direct appeal.

Daniels filed an initial motion for postconviction relief in state court on January 30, 2012 (Ex. D) and two amended motions on February 6, 2012 (Ex. E), and February 18, 2013 (Ex. F).  In his motions, Daniels claimed that the trial court abused its discretion in sentencing him to the statutory maximum and that the state failed to prove his guilt beyond a reasonable doubt.  Ex. E.  He also argued that trial counsel was ineffective for failing to present mitigating factors for departure sentencing.  Ex. F.  The trial court summarily denied Daniels' motions for postconviction relief on April 10, 2013.  Ex. G.

Daniels appealed the state trial court's denial of postconviction relief to the First District Court of Appeal on April 22, 2013.  Supp. Ex. B.  The First District affirmed per curiam without a written opinion on October 30, 2013.  Ex. H.  Daniels moved for reconsideration and clarification, but his motions were denied.  Supp. Exs. E, F, G, H. The mandate issued on February 18, 2014.  Supp. Ex. I.

## III. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus.  See 28.U.S.C. § 2254; Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016).

> Under AEDPA, a federal court may not grant a habeas corpus application "with respect to any claim that was adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d), unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

> States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  See Knowles v. Mirzayance, 556 U.S. 111, ___, 129 S. Ct. 1411, 1412, 173 L.Ed.2d 251 (2009).

Berghuis v. Thompkins, 560 U.S. 370, 380 (2010); see also Bester v. Warden, 836 F.3d 1331, 1336 (11th Cir. 2016).   Deferential review under Section 2254 is limited to the record that was before the state court that adjudicated the claim on the merits.  See Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (regarding § 2254(d)(1)); Landers v. Warden, Att'y Gen. of Ala., 776 F.3d 1288, 1295 (11th Cir. 2015) (regarding § 2254(d)(2)).

"Because the requirements of § 2254(d) are difficult to meet, it is important whether a federal claim was 'adjudicated on the merits in State court.'"  Johnson v. Williams, --- U.S. ---, 133 S. Ct. 1088, 1091 (2013).  Thus, the first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Wilson v. Warden, Ga. Diagnostic Prison, 834 F.3d 1227, 1235 (11th Cir. 2016) (en banc); Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). Regardless of whether the last state court provided a reasoned opinion, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  Harrington v. Richter, 562 U.S. 86, 99 (2011); see also Williams, 133 S. Ct. at 1096 ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits – but that presumption can in some limited circumstances be rebutted.").  The presumption is rebuttable and may be overcome "when there is reason to think some other explanation for the state court's decision is more likely."  Richter, 562 U.S. at 99-100; see also Williams, 133 S. Ct. at

1096-97.  However, "the Richter presumption is a strong one that may be rebutted only in unusual circumstances."  Williams, 133 S. Ct. at 1096.

"To determine whether the presumption has been rebutted, we look to the state court's decision and the record in the case to determine whether 'the evidence leads very clearly to the conclusion that [the] federal claim was inadvertently overlooked in state court."  Childers v. Floyd, 736 F.3d 1331, 1334 (11th Cir. 2013) (en banc) (quoting Williams, 133 S. Ct. at 1097) (footnote omitted).  Where the presumption has been rebutted, AEDPA deference does not apply, and the claim is reviewed de novo.  Williams, 133 S. Ct. at 1097 ("When the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court, § 2254(d) entitles the prisoner to an unencumbered opportunity to make his case before a federal judge.");  Bester, 836 F.3d at 1336-37 (finding that the presumption was rebutted and reviewing the claim de novo).

When it is unclear whether AEDPA deference applies, "[c]ourts can . . . deny writs of habeas corpus under § 2254 by engaging in de novo review."[2]  Thompkins, 560 U.S. at 390; see also Mirzayance, 556 U.S. at 114 ("Whether reviewed under the standard of review set forth in § 2254(d)(1) or de novo, [the petitioner] failed to establish that his counsel's performance was ineffective.");  Hitchcock v. Sec'y, Fla. Dep't of Corr., 745 F.3d 476, 484 (11th Cir. 2014) ("whether the issue is reviewed de novo or under AEDPA's deferential standards, [the petitioner] is not entitled to federal habeas relief on his Eighth

---

[2] The opposite is not true.  "Courts cannot grant writs of habeas corpus under § 2254 by engaging only in de novo review when it is unclear whether AEDPA deference applies, § 2254(d).  In those situations, courts must resolve whether AEDPA deference applies, because if it does, a habeas petitioner may not be entitled to a writ of habeas corpus under § 2254(d)."  Thompkins, 560 U.S. at 390.

Amendment claim"); Tanzi v. Sec'y, Fla. Dep't of Corr., 772 F.3d 644, 661, n.3 (11th Cir. 2014) ("Because it is unclear whether AEDPA deference applies under these circumstances, we follow the Thompkins Court's instructions and conduct de novo review of the prejudice element of [the petitioner's] Brady claim); Reese v. Sec'y, Fla. Dep't of Corr., 675 F.3d 1277, 1291 (11th Cir. 2012) (explaining that, even when it is clear that AEDPA deference applies, the federal appellate court may affirm the denial of habeas relief based solely on de novo review); Allen v. Sec'y, Fla. Dep't of Corr., 611 F.3d 740, 753 (11th Cir. 2010) ("Alternatively, even if no deference were due the state collateral trial court's decision on the performance element, we would conclude on de novo review that [the petitioner] had failed to establish it.").  This is "because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on de novo review, see § 2254(a)," which is a more favorable standard of review for the petitioner.  Thompkins, 560 U.S. at 390.  As such, a federal court need not resolve whether AEDPA deference applies if de novo review results in denial of habeas corpus relief.  Id.; Conner v. GDCP Warden, 784 F.3d 752, 767, n.16 (listing cases).

## IV.    Cognizability, Exhaustion, and Procedural Default

Federal habeas review "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 68 (1991) (citations omitted).  As such, federal habeas "does not lie for errors of state law." Id. at 67 (quotations omitted).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  Id. at 67-68.  "In the area of state sentencing guidelines in particular, . . . federal courts can not review a state's alleged failure to adhere to its own sentencing procedures."  Branan v. Booth, 861 F.2d

1507, 1508 (11th Cir. 1988).  "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is couched in terms of equal protection and due process."  Id. (quotation omitted).

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction.  See 28 U.S.C. § 2254(b), (c).  To exhaust state remedies, the petitioner must "fairly present[ ]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review.  Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). As the United States Supreme Court has explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights."  Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)).  To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.  Duncan, supra, at 365-366, 115 S.Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004); see also Boerckel, 526 U.S. at 845 ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").

"The crux of the exhaustion requirement is simply that the petitioner must have put the state court on notice that he intended to raise a federal claim."  Preston v. Sec'y, Fla.

Dep't of Corr., 785 F.3d 449, 457 (11ᵗʰ Cir. 2015); see also French v. Warden, Wilcox State Prison, 790 F.3d 1259, 1270-71 (11ᵗʰ Cir. 2015), cert. denied, 136 S. Ct. 815 (2016). To do so, petitioners must "present their claims to the state courts such that the reasonable reader would understand each claim's particular legal basis and specific factual foundation." Kelley v. Sec'y for Dep't of Corr., 377 F.3d 1317, 1344-45 (11th Cir. 2004) (citing Picard, 404 U.S. at 277).

> It is not sufficient merely that the federal habeas petitioner has been through the state courts, Picard v. Connor, 404 U.S. 270, 275-76, 92 S. Ct. 509, 512, 30 L.Ed.2 438 (1971), nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made, Anderson v. Harless, 459 U.S. 4, 6, 103 S. Ct. 276, 277, 74 L.Ed.2d 3 (1982) (citations omitted).  The petitioner must present his claims to the state courts such that they are permitted the "opportunity to apply controlling legal principles to the facts bearing upon (his) constitutional claim." Picard, 404 U.S. at 277, 92 S. Ct. at 513 (alteration in original).

Id. at 1344. "In sum, to preserve a claim of ineffective assistance of counsel for federal review, the habeas petitioner must assert this theory of relief and transparently present the state courts with the specific acts or omissions of his lawyers that resulted in prejudice." Id. Thus,

> [f]ederal habeas petitioners are undoubtedly on their strongest footing with regard to the exhaustion requirement when their federal claims are carbon copies of the claims they presented to the state courts. Such reproduction leaves no question that the claims presented to the federal court are the same as those that were presented to the state court. But we do not demand exact replicas. We recognize that habeas petitioners are permitted to clarify the arguments presented to the state courts on federal collateral review provided that those arguments remain unchanged in substance.

Id.

"[W]hen a petitioner has failed to exhaust his claim by failing to fairly present it to the state courts and the state court remedy is no longer available, the failure also constitutes a procedural bar."  McNair v. Campbell, 416 F.3d 1291, 1305 (2005) (citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991)); see also Boerckel, 526 U.S. at 848; Vazquez v. Sec'y, Fla. Dep't of Corr., 827 F.3d 964, 966 (11th Cir. 2016). Notwithstanding a procedural default, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice.  Maples v. Thomas, 132 S.Ct. 912, 922 (2012) (citations omitted).

> "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court."  Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999).  To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different.  Id.; Crawford v. Head, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003).

Although states can waive procedural bar defenses such as exhaustion in federal habeas proceedings, the waiver must be express, see 28 U.S.C. § 2254(b)(3), and a "deliberate decision to proceed straightaway to the merits."  Wood v. Milyard, -- U.S. --, 132 S. Ct. 1826, 1834 (2012); Vazquez, 827 F.3d at 966. Federal habeas courts abuse their discretion if they disregard a state's deliberate waiver of a procedural defense, see Wood, 132 S. Ct. at 1834; Day v. McDonough, 547 U.S. 198, 210 n.11, but they also "have discretion, in 'exceptional cases,' to consider a nonexhaustion argument 'inadverten[tly]' overlooked by the State in the District Court."  Wood, 132 S. Ct. at 1833 (quoting Granberry v. Greer, 481 U.S. 129, 132 (1987)); see also Day, 547 U.S. at 201.

8

Where the federal habeas court determines that the state inadvertently overlooked a procedural defense rather than strategically decided to withhold or relinquish the defense, the court may consider sua sponte the procedural defense.  Day, 547 U.S. at 209, 211. Addressing the procedural defense of untimeliness, the Supreme Court explained:

> [o]f course, before acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions. . . . Further, the court must assure itself that the petitioner is not significantly prejudiced by the delayed focus on the limitation issue, and "determine whether the interests of justice would be better served: by addressing the merits or by dismissing the petition as time barred."  See Granberry, 481 U.S., at 136, 107 S. Ct. 1671.

Id. at 210; see also Wood, 132 S. Ct. at 1833-34.

## V. Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, Petitioner "must meet both the deficient performance and prejudice prongs of Strickland."  Wong v. Belmontes, 558 U.S. 15, 16 (2009) (per curiam) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland], 466 U.S. at 688, 104 S.Ct. 2052.  A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance.  Id., at 689, 104 S.Ct. 2052.  The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S.Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id., at 694, 104 S.Ct.

2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S.Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S.Ct. 2052.

Richter, 562 U.S. at 104. Because both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010) (citation omitted); see also Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1326 (11th Cir. 2013).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

Daniels asserts that his counsel was constitutionally ineffective for failing to present mitigating factors for departure at sentencing, especially because the pre-sentence investigation recommended departure. Petition at 4-7. Specifically, he contends that his counsel was ineffective for not arguing and presenting the bases for departure of sentence pursuant to Florida Statute § 921.002(f) and § 921.0026(2)(j). Id. at 5. Under § 926.0026(2)(j), a departure from the lowest permissible sentence may be reasonably justified where the "offense was committed in an unsophisticated manner and was an isolated incident for which the petitioner has shown remorse." He submits that (1) his attorney performed deficiently for failing to present statutory mitigation; and (2) a reasonable probability exists that had defense counsel presented to the court a cogent argument for a statutory downward departure, the sentencing court would have sentenced him to five years state prison, followed by two years drug offender community control, and three years drug offender probation. Id. at 6.

Daniels exhausted this claim in state court by presenting it in his motion for postconviction relief filed February 13, 2013.[3] Ex. F; Response at 12. To his motion, he attached the pre-sentence investigation report as Exhibit A. Ex. F. The state trial court denied his claim after making the following general findings and conclusions:

> On May 17, 2011, Defendant entered an open plea of guilty in the above-captioned case to one count of DUI Manslaughter. See Petition to Enter Plea of Guilty. Disposition was continued until a later date. On June 30, 2011, after a disposition hearing, the court sentenced Defendant to 10 years imprisonment in the Department of Corrections followed by 5 years drug offender probation. See Judgment and Sentence. Defendant did not file an appeal.

Ex. G. The state trial court then described this particular claim as "(C) Trial counsel was ineffective for failing to argue for a downward departure sentence." Id. The state trial court summarily denied Daniels' claim as follows:

> As to ground (C), the record reflects that the court was aware that it could impose a downward departure sentence. See Petition to Enter Plea of Guilty at 4. However, the court chose not to do so. Accordingly, the claim raised is without merit.

Id. To conclude that "the court was aware that it could impose a downward departure sentence" but "chose not to do so," id., the state trial court relied solely on the handwritten plea agreement (Petition to Enter Plea of Guilty at 4), which stated:

> The plea is to the Court. In a letter from William P. Cervone dated 5/11/2011, Mr. Cervone indicated the State's recommendation at sentencing would be ten years followed by five years probation plus restitution of $14,000.00 and that if the Court imposed a lower than guideline sentence the State would not appeal as long as it contained the statutory required mandatory.

---

[3] The Court will apply the benefit of the prison mailbox rule and deem Daniels' state and federal pleadings filed as of the day he provided the pleadings to prison officials for mailing. See Rule 3(d), Rules Governing Section 2254 Cases in the United States District Courts.

Id..  Daniels appealed, and the First District Court of Appeal issued a per curiam affirmance without written opinion.  Ex. H.

With regard to the standard of review in federal court, Daniels contends that the state court's decision is contrary to Strickland, did not address his Sixth Amendment claim, and is not an adjudication of the merits of his claim.  Petition at 6.  Rather, he asserts that "the [state trial court's] decision skirts around the constitutional, ineffective assistance of counsel claim, and is therefore contrary to or an unreasonable application of Strickland v. Washington."  Id.  Reading his pro se Petition liberally, Daniels appears to argue for de novo review because either the state court's decision was not on the merits or it was contrary to or an unreasonable application of Strickland.  Daniels focuses on the state trial court's order and does not address the effect of the state appellate court's per curiam decision without written opinion.

To determine the standard of review, the Court begins by presuming that the First District Court of Appeal's per curiam affirmance constitutes the last state court adjudication on the merits.  See Williams, 133 S. Ct. at 1096; Richter, 562 U.S. at 99.  Although the presumption is strong, it may be rebutted if there exists any "indication or state-law procedural principles to the contrary" or "when there is reason to think some other explanation for the state court's decision is more likely."  Id. at 99-100; see also Williams, 133 S. Ct. at 1096-97.  If the presumption is rebutted, this Court reviews Daniels' claim de novo.  See Williams, 133 S. Ct. at 1097; Bester, 836 F.3d at 1336-37.  If the presumption is not rebutted, then this Court must apply AEPA deference to the state court's decision.

"To determine whether the presumption has been rebutted, [the Court looks] to the state court's decision and the record in the case to determine whether 'the evidence leads very clearly to the conclusion that [the] federal claim was inadvertently overlooked in state court.'" Childers, 736 F.3d at 1334 (quoting Williams, 133 S. Ct. at 1097) (footnote omitted).  The record on appeal before the First District failed to include the plea and sentencing transcripts from the criminal case.[4]  See Supp. Ex. A.  Without a reliable record of counsel's actions at the sentencing hearing, the Court doubts whether the state courts could have meaningfully reviewed Daniels' claim that counsel was ineffective for failing to present mitigating factors for departure at sentencing.  See Moore v. Sec'y, Fla. Dep't of Corr., 486 F. App'x 810, 811 (11th Cir. 2012) (unpublished) (vacating order denying habeas petition because the district court could not meaningfully review petitioner's claim in the absence of the plea colloquy and sentencing hearing transcripts); Williams v. Allen, 324 F. App'x 756, 759 (11th Cir. 2009) (unpublished) (vacating order dismissing habeas petition because the district court lacked trial transcripts necessary for fact-based evaluation of counsel's performance); Ferguson v. Culliver, 527 F.3d 1144, 1148-49 (11th Cir. 2008) (holding that the absence of the trial record precluded the district court from conducting a meaningful review of the state court decision and that a federal habeas court must examine the state trial record rather than simply rely upon a state court's findings as to what the trial record contains); Wyzykowski v. Dep't of Corr., 226 F.3d 1213, 1219 (11th Cir. 2000) (addressing the state's failure to file a record of the state court change-of-plea proceedings); cf. Pope v. Sec'y for Dep't of Corr., 680 F.3d 1271,

---

[4] Indeed, the transcripts were not even transcribed until 2016.  See Docs. 23 & Ex. A; 25; 27 at 18.

1287-88 (11th Cir. 2012) (concluding that the district court erroneously granted habeas relief on a barren record where the state court evidentiary hearings "barely touched" on counsel's performance during the penalty phase).  In turn, the absence of meaningful review suggests that the presumption that the First District Court of Appeal's opinion was on the merits may have been rebutted.[5]  See Bester, 836 F.3d at 1336-37; Childers, 736 F.3d at 1334 (quoting Williams, 133 S. Ct. at 1097) (footnote omitted); cf. Davis v. Sec'y for Dep't of Corr., 341 F.3d 1310, 1313 (11th Cir. 2003).  However, the Court need not decide whether AEDPA deference applies because even under a de novo standard of review, Daniels is not entitled to habeas corpus relief on this claim.  See, e.g., Thompkins, 560 U.S. at 390.

To evaluate Daniels' claim that his counsel ineffectively failed to present statutory mitigation, the Court directed Respondents to file the plea and sentencing transcripts from the state court, as well as the record on appeal.  See Rule 7, Rules Governing Section 2254 Cases in the United States District Courts.  The record clearly refutes Daniels' contention that his attorney failed to present statutory mitigation under §§ 921.002() and 921.0026(2)(j).  Prior to the sentencing hearing, counsel submitted a packet to the court that included "letters from various folks."  Sent. Tr. at 4-5.  At the lengthy sentencing hearing, counsel presented fifteen friends and family members, many of whom had known

---

[5] Even assuming the presumption is not rebutted, the absence of material transcripts in the appellate record could easily render the state appellate court's decision an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2) or an unreasonable application of Strickland.  In either case, the Court would conduct a de novo review, without deference to the state court's decision.  See French, 790 F.3d at 1268 (citation omitted); Madison v. Comm'r, Ala. Dep't of Corr., 761 F.3d 1240, 1243-44 (11th Cir. 2014) (citation omitted).  Also, the Court would not be constrained to evaluating only the state court record.  See id. at 1249-50.

Daniels for thirty years or their whole lives.[6]  All fifteen spoke in support of a mitigated

sentence for Daniels, based on various factors, including but not limited to, Daniels'

sincere and profound remorse, lack of intent, strong religious faith, hard work ethic, stable

family, willingness to help others, and overall good character.  <u>See</u> Sent. Tr. at 17-81.

Daniels spoke in allocution, directed in part by counsel's guiding questions, and expanded

on the remorse he began to express at his plea colloquy.  <u>See</u> Plea Tr. at 13-14; Sent.

Tr. at 81-87.  Counsel then attempted to persuade the court to impose a sentence below

the guidelines.  <u>See</u> <u>id.</u> at 88-100.  Counsel introduced the guidelines and departures as

follows:

> The legislature in promulgating the guidelines set forth where
> there's a death a 120-month presumptive guideline sentence.
> But the same legislature that set forth that 120-month
> presumptive guideline sentence fashioned a minimum
> mandatory, and they didn't set it at ten years.  They set it at
> four years, contemplating full well, your Honor, that courts
> would sentence people who were similarly charged to Mr.
> Daniels to a sentence that would incorporate four years but
> would not incorporate a ten-year sentence.

<u>Id.</u> at 90.  Counsel then proceeded to discuss at length the case of <u>State v. VanBebber</u>,

848 So.2d 1046 (Fla. 2003), a case with similar facts in which the defendant was

---

[6] The witnesses who spoke on behalf of Daniels included his friend of thirty years, Chip Osteen (Sent. Tr. at 17-19); his wife of twenty-four years, Kathy Watts Daniels (Sent. Tr. at 19-26); his sister, Annie Clara Widemond (Sent. Tr. at 26-31); his aunt, Orprie Harris (Sent. Tr. at 31-33); his mother, Annie Lee Hollings (Sent. Tr. at 33-38); his sister, Lisa Daniels (Sent. Tr. at 38-42); his friend since childhood, Michael McKinney (Sent. Tr. at 42-46); his friend from church for over twenty-five years (Sent. Tr. at 46-52); the wife of a married couple with whom he and his wife were friends, Ellen Monds (Sent. Tr. at 52-57); his friend, Frank Rigdon (Sent. Tr at 57-60); his stepdaughter, whom he raised since she was three or four years old, Sylvia Watts (Sent. Tr. at 60-66); his sister-in-law whom he had known for over thirty years, Sandra Watts (Sent. Tr. at 66-71); his niece, Kasoma Mobley (Sent. Tr. at 71-73); his brother, Gary Jones (Sent. Tr. at 74-78); and his daughter, Tameka Daniels Myers (Sent. Tr. at 78-81).

sentenced to fifteen years probation and a 200-month suspended sentence.  Id. at 91.

Counsel then highlighted that Daniels was 53 years old, had been employed for thirty-

three years with the mill, had no criminal record, had never been arrested, had only a few

minor traffic infractions on his driving record, was a religious man who expressed

remorse, and who pled without any promise of the sentence he would receive.  Id. at 92.

Counsel then cited Florida Statute 921.0026(2)(j) and explained how it was applied in the

VanBebber case and implied that it also applied to Daniels.  Id. at 93-96.  Counsel then

returned to specifically addressing Daniels, following the statutory criteria:

> MR. WILLIAMS:     Your Honor, if there is a case that
> would come before the court system for leniency, for mercy,
> for a sentence under that ten years, you have far vaster and
> greater experience than I could ever imagine, but I can
> personally speak for my 37 years of practice that I don't think
> that you will ever have another person – or I've never had
> another person who came in whose situation was as mitigated
> as Mr. Daniels'.
>
> If there is anyone who is going to receive that gift of
> leniency, that blessing, I would respectfully submit that the
> man seated at that table would be one who could receive it
> compared to other individuals similarly situated compared to
> the great remorse which he has expressed.
>
> The VanBebber case basically said that the sentencing
> under 921, that the basis for downward departure was it was
> an unsophisticated act, and it agreed that DUI certainly is
> unsophisticated, for which the defendant had expressed great
> remorse, and an isolated incident.
>
> He has expressed great remorse.   In fact, you
> remarked I think to Mr. Fleck and myself in chambers or
> maybe even on the record that you could see the great pain
> that Mr. Daniels was in when you first saw him in court.
>
> It certainly is an isolated incident.  The only time in his
> life and I'm confident the only time it will ever occur no matter
> what sentence is imposed upon him.  Your Honor, he would
> clearly qualify for a downward departure predicated upon that.

16

Even more importantly in this case, Mr. Cervone, the elected state attorney in Gainesville for the circuit, has indicated in a letter, and it's not – it's part of the presentencing report, that if the court did impose a sentence under the ten-year guideline score sheet, that he would not appeal it nor challenge it in the future as long as it included the appropriate statutory requirements, which would be the four-year minimum mandatory sentence and all the other requirements.

THE COURT:  But Mr. Cervone was not willing to go on the record to recommend less than ten years.  Is that correct?

MR. WILLIAMS:  No, ma'am, he was not.

THE COURT:  All right.  Go ahead.

Id. at 96-98.  After acknowledging that Daniels could not take the pain away from the victim's family, counsel asked the court for mercy, emphasizing the need for the punishment to fit the offender and not merely the crime.  Id at 98-100.  Counsel concluded by requesting "a sentence of four years or five years, as recommended in the presentence report, to be followed by a period of community control and a period of probation, any and every condition that the court would wish to place on Mr. Daniels."  Id. at 100.

Having previously indicated that the State would not appeal a below-guideline sentence as long as it included the statutory requirements, the prosecutor stated only that:

The defendant's crime necessarily implicates the imposition of a fine of at least a thousand dollars and up to $10,000.  It implicates a lifetime permanent driver's license revocation and a minimum mandatory prison sentence of four years.

There is nothing that I can say to the court that will more passionately or articulately tell the court the scale of the damage done by this crime, the feelings of the [ ] survivors, the pain, the sorrow, the horror, and the duration of pain that

17

>these people will suffer as a result of this defendant's
>deliberate conduct better than what they told you
>themselves.[7]  There's nothing I can say, I'm just a lawyer.
>
>I will say I hope you will honor the memory of Alex Trail
>by honoring these good people's wishes and sentiments, and
>I will trust the court to do that.
>
>Thank you.

Id. at 100-01.

Before pronouncing sentence, the court explained:

>Obviously I've thought about this case a lot.   Mr.
>Daniels has been before me on many occasions, I've read the
>letters, I've read the presentence investigation, I've read the
>mental health evaluation about Mr. Daniels, among other
>things.  And Mr. Williams was right, I do have a long history in
>the criminal justice system, and I've watched courts,
>prosecutors, the legislature struggle with the whole problem
>of DUIs and DUI manslaughters.  And what has finally been
>achieved is a guideline sentence that should apply to
>everyone.
>
>And [the prosecutor] and Mr. Williams both will be the
>first to agree with me that there are times when the law is not
>sufficiently severe to punish that person that has three or four
>prior DUIs, should never have been driving, and yet they're
>out on the road killing people.
>
>And then we have circumstances like this that I've
>heard many people say over the years – I don't think they say
>it as much anymore as they used to, but for the grace of God
>go on, when they hear about a DUI manslaughter or someone
>just getting a DUI.
>
>. . .

---

[7] Five witnesses presented victim impact statements at sentencing, including the victim's mother-in-law, Alice M. Parker; the victim's son, Michael Trail; the victim's daughter-in-law, Elizabeth Trail; the victim's son, David Trail (by letter); and the victim's wife, Patsy Trail.  Sent. Tr. at -17.

And the intent was not there on Mr. Daniels' part.  The court will concede that.

. . .

What I've seen the law try to do and what I'm trying to tell you all is that the legislature has chosen this path, for whatever reason, but it keeps the courts in their administering justice on a level playing field.  It means that the county commissioner, which happens to be one of the first DUI manslaughter cases I ever participated in, very well known in the community, seriously intoxicated, kills a young man.  And so there you have the impulse to treat him more leniently because of his position in society.

And I think that over the years the legislature has tried to deal with treating similar crimes in a similar way except for extenuating circumstances, and in this case the court's aware that there are mitigating factors.  I can't think of many DUI manslaughters that I have presided over, either as the judge or as a prosecutor, that didn't have some mitigation factors to them.

But the court does not find any of the mitigating factors compelling enough to change its mind about what sentence should be imposed in this case.  I hate it.  Obviously Mr. Daniels is a good man, but with where we are, we're not where we were this time a year ago.  And if we all could go back in time we would try to keep these things from happening.

Id. at 102-05.  The court then proceeded to impose a guideline sentence of ten years imprisonment (including the four-year minimum mandatory), followed by five years of drug offender probation, a fine and costs, a permanent revocation of Daniels' driver's license, and 100 hours of community service speaking about the dangers of drinking and driving. Id. at 105-10.

To the extent Daniels claims that his counsel failed to present mitigation to the sentencing court, his claim is clearly refuted by the record.  Counsel presented extensive evidence and argument for a statutory downward departure and a below-guideline

sentence by calling fifteen friends and family members to speak to the court about Daniels' character and remorse, among other things.   Counsel followed the statutory framework, discussed relevant case precedents, and made persuasive arguments on behalf of a lesser sentence for Daniels.   As such, counsel's performance was not deficient.   Moreover, Daniels cannot prove that the court would have sentenced him to a lesser sentence had counsel provided different representation.   The court conceded that Daniels did not intend the crime and even commented that he was a good man.   The court acknowledged that mitigating factors existed, but did not find them compelling enough to impose a non-guideline sentence, given that the guidelines were designed to apply to everyone.   The Court does not believe that counsel could have done anything more that would have caused the sentencing court to impose a lesser sentence.   Because Daniels has not shown deficient performance or prejudice, denial of his claim is consistent with Strickland.   Ground one is denied.

## B. **Ground Two**

In his federal Petition, Daniels contends that his counsel was constitutionally ineffective for allowing the court to accept a guilty plea without requiring the state to provide a factual basis with which he concurred.   Petition at 8-9.   Respondents assert that Daniels exhausted his state court remedies on this ground.[8]   Response at 19.

---

[8] Respondents first assert generally that "[a]lthough Respondent addresses select procedural bars and addresses the claims on the merits, Respondent asserts all available procedural bars."   Response at 6 (emphasis omitted).   When addressing ground two, however, Respondents assert that Daniels "exhausted his state court remedies on this ground by presenting this argument in one of his petitions alleging ineffective assistance of appellate (sic) counsel".   Id. at 19.   Clearly, Respondents inadvertently erred by referring to "appellate" counsel, as Daniels neither had appellate counsel nor filed a direct appeal.

In ground two of his first amended state postconviction motion, Daniels asserted that the State failed to prove beyond a reasonable doubt that at the time of the crash, he knew that the crash occurred or that he failed to give information as required by law or render aid as required by law.  Ex. E at Ground Two.   The state trial court described Daniels' claim as "(B) The State failed to prove Defendant's guilty beyond a reasonable doubt[.]"  Ex. G.  The state trial court then denied Daniels' claim as follows:

> As to ground (B), by entering his plea Defendant admitted to the facts as alleged by the State.  Vernold v. State, 376 So. 2d 1166, 1167 (Fla. 1979); Vinson v. State, 345 So. 2d 711, 713 (Fla. 1977).  He cannot now challenge the sufficiency of the evidence supporting those facts.  Betts v. State, 792 So. 2d 589, 590 (Fla. 1st DCA 2001); Jones v. State, 699 So. 2d 809, 810 (Fla. 1st DCA 1997); Parker v. State, 603 So. 2d 616, 616-17 (Fla. 1st DCA 1992).  Because the facts alleged by the State supported the existence of the charged offense, there was an adequate factual basis for the conviction.  In addition, Defendant does not raise any factual matter of which he was unaware prior to entering his plea.  Accordingly, the claim raised is without merit.

Id. at 2.  The First District Court of Appeal affirmed without written opinion.  Ex. H.

While the federal and state claims may share common factual underpinnings, they present distinct legal theories.   In the federal Petition, Daniels raises an ineffective-assistance-of-counsel claim.  But in his state motion, Daniels completely failed to cite the Sixth Amendment or mention the common term, "ineffective assistance of counsel;" indeed, he never even mentions counsel at all.  Ex. E at Ground Two.  Clearly, Daniels did not put the state courts on notice that he intended to raise an ineffective assistance of counsel claim.  Therefore, contrary to Respondents' assertion, Daniels failed to exhaust this claim in the state courts, and it is procedurally defaulted.  He offers no cause and

prejudice for the failure to exhaust, and he does not claim a fundamental miscarriage of justice.

Respondents' waiver of the exhaustion defense when addressing ground two appears to be an inadvertent oversight akin to the waiver in <u>Day</u> rather than a deliberate decision to forego a meritorious procedural defense as in <u>Wood</u> and <u>Vazquez</u>. However, the Court need not decide this question. Instead, the Court may deny Daniels' claim "on the merits, notwithstanding the failure of the applicant to exhaust the remedies of the State." 28 U.S.C. § 2254(b)(2). To that end, the Court will alternatively address the merits of ground two.

The gravamen of Daniels' complaint is that the court accepted his plea without requiring the state to provide a factual basis with which he concurred. Petition at 8. The record before the state court refutes this factual allegation. In his petition to enter a plea, Daniels initialed the following statement:

> 15. My attorney has advised me that at trial the State could present evidence to establish the facts set forth in the probable cause affidavit and I agree that the Court may rely upon documents in the court's file, including the probable cause affidavit, for a factual basis for this plea.

Ex. B at 3. The probable cause affidavit was lengthy and included the officer's observations of Daniels following the crash and the statements of a witness who observed the crash. Ex. G at 18-19. Moreover, Daniels agreed and stipulated in open court during the plea colloquy that the state could prove and establish the facts against him. Plea Tr. at 6. He also agreed to submit to the probable cause affidavit, as well as any other documents in the court file, to establish probable cause for a factual basis for the plea. <u>Id.</u>

Furthermore, upon the court's request for a factual basis for the record, the prosecutor stated:

> The State is prepared to prove beyond a reasonable doubt that on July 31st, 2010, Mr. Daniels was operating a motor vehicle in the County of Baker, Florida.  He was traveling on State Road 121.  He crossed over the center line.  There were no defects in the road or the weather to contribute to such a movement, and he caused a nearly head-on collision with the victim in this case, Alex Gene Trail, a 58-year-old human being.  As a result of that crash, Mr. Trail died.
>
> Mr. Daniels was investigated by law enforcement that responded to the scene, and it was apparent from law enforcement that he demonstrated various indications of alcohol impairment, including the odor of his breath, the fact that he was unsteady on his feet, and there was no evidence that he had been injured in the crash.
>
> Voluntary intelligent statements were made – were obtained from Mr. Daniels, in which he admitted to the consumption of an alcoholic beverage within a short period of time approximate to the crash.  And ultimately, he gave blood alcohol readings of 0.156 and 0.163, both over, of course, 0.15, which confirmed both the physical and evidence, as well as the admissions of Mr. Daniels.

Plea Tr. at 11-12.  Following this proffer, counsel agreed when asked by the court that the state could make out a prima facie case.  Id. at 12.  Daniels himself did not speak up or object.  See id.  The court accepted Daniels' plea and found that a sufficient factual basis for the plea existed, that Daniels was well represented by counsel, and that the plea was entered knowingly after a full explanation of the meaning of the plea.  Id. at 15.

Because the record refutes Daniels' assertion that counsel failed to require a factual basis, Daniels cannot demonstrate deficient performance by counsel or resulting prejudice.  The denial of the claim raised in ground two is neither contrary to nor an unreasonable application of federal law, and it is not based on an unreasonable

determination of the facts.  In addition, Daniels' claim would not succeed even under de novo review.  Ground two is denied.

## C. Ground Three

Daniels contends that the trial court erred by sentencing him to the statutory maximum contrary to the recommendation of the pre-sentencing investigator and concurrence of the prosecutor.  Petition at 12.  In his federal Petition, he includes only one sentence referring to due process, equal protection, and the Fourteenth Amendment to the Constitution.  Id. at 13.  In his state postconviction motion, Daniels raised this claim solely as a state-law claim, failing to fairly present it as a federal constitutional claim.  See Ex. E at Ground One.  But despite Daniels' current attempt to couch his claim in terms of due process and equal protection, the Court agrees with Respondents that Daniels fails to present a federal constitutional claim.  See Response at 25-27; see also Branan, 861 F.2d at 1508.  As such, the claim in ground three is not cognizable on federal habeas review.  See McGuire, 502 U.S. at 67-68 (reiterating that federal habeas is unavailable for errors of state law); Branan, 861 F.2d at 1508 ("In the area of state sentencing guidelines in particular, . . . federal courts can not review a state's alleged failure to adhere to its own sentencing procedures.").  Even if the claim were cognizable, the record refutes Daniels' contention, as the statutory maximum penalty was fifteen years' imprisonment, yet he was sentenced to ten years' imprisonment.  See Ex. B; Plea Tr. at 3.  Ground three is due to be denied.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1. The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2. The **Clerk of the Court** shall enter judgment accordingly and close this case.

3. If Petitioner appeals the denial of his Petition, **the Court denies a certificate of appealability**.[9]  Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 3rd day of February, 2017.

_____
BRIAN J. DAVIS
United States District Judge

lc22
c:  Anthony Daniels FDOC # G20172
    Counsel of Record

---

[9] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  Upon due consideration, this Court will deny a certificate of appealability.